UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN R. BARROWMAN,

                          Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of
Social Security,

                          Defendant.

No.  C07-874Z

ORDER

THIS MATTER comes before the Court on appeal from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying plaintiff John Barrowman's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 401-433 and 1381-1383f.  Having reviewed all papers filed in support of and in opposition to the appeal, the Court AFFIRMS the Commissioner's decision denying DIB and SSI benefits to plaintiff and DIRECTS the Clerk to send a copy of this Order to all counsel of record.

**Background**

Plaintiff was born on May 11, 1978, and is currently 29 years old.  AR 319.  He completed only nine years of school and has never obtained a GED.  AR 320.  Plaintiff alleges onset of his disabilities on March 6, 2003.  AR 57.  He has worked as a landscape

laborer / assistant and as a security guard, as well as in restaurants and on an assembly line, AR 71-77, 336, 343, and he engaged in substantial gainful activity for five months in 2006, earning approximately $1,000 per month.  AR 14, 321-23.  The Commissioner has determined that plaintiff suffers from the following severe impairments:  depression, anxiety, personality disorder, and substance abuse.  AR 14 at ¶ 3.

In the summer of 2003, plaintiff filed applications for DIB and SSI payments.  AR 12, 57.  In December 2006, Administrative Law Judge M.J. Adams found plaintiff ineligible for such payments, concluding that plaintiff was not disabled because he had the requisite residual functional capacity to perform past relevant work.  AR 22-23.  In April 2007, after receiving additional evidence, AR 6A, the Appeals Council denied plaintiff's request for review, AR 4-6, making the ALJ's ruling the "final decision" of the Commissioner for purposes of 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner . . . may obtain a review of such decision by a civil action commenced within sixty days."  Plaintiff timely filed the present action challenging the denial of benefits.

**Discussion**

**A.**     **Standard of Review**

The Commissioner has established a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4).  Step one inquires whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b); *see also* 20 C.F.R. § 404.1572 (defining substantial gainful activity as significant physical or mental activities done or usually done for pay or profit).  If so, the claimant is not entitled to disability benefits, and no further evaluative steps are required.  Step two asks whether the claimant has a severe impairment, or a combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R.

§§ 404.1520(c) & 416.920(c).  If not, the claimant is not entitled to disability benefits, and again, additional analysis is not required.  Step three involves a determination of whether any of claimant's severe impairments is equivalent to one that is listed in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant with an impairment that "meets or equals" a listed impairment for the requisite twelve-month duration is per se disabled and qualifies for benefits.

If the claimant is not per se disabled, then the question under step four is whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e) & (f) and 416.920(e) & (f).  If the claimant can still perform past relevant work, then the claimant is not entitled to disability benefits and the inquiry ends there.  On the other hand, if the opposite conclusion is reached, the burden shifts to the Commissioner at step five to prove that the claimant can make an adjustment to other work, taking into account the claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(g) & 416.920(g).  If the claimant cannot make such adjustment to other work, disability benefits may be awarded.

This Court's review of a decision reached via this five-step process is limited to assessing whether the Commissioner's denial of benefits is free of legal error and based on factual findings that are supported by substantial evidence.  _Tidwell v. Apfel_, 161 F.3d 599, 601 (9th Cir. 1998); _see_ 42 U.S.C. § 405(g).  Substantial evidence means more than a mere scintilla but less than a preponderance of evidence; it is "such relevant evidence as a reasonable person might accept as adequate to support a conclusion."  _Lingenfelter v. Astrue_, 504 F.3d 1028, 1035 (9th Cir. 2007).  In determining whether the Commissioner's findings are supported by substantial evidence, the Court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  _Reddick v. Chater_, 157 F.3d 715, 720 (9th Cir. 1998).  The Court may not affirm simply by isolating a specific quantum of supporting evidence.  _Jones_

1   *v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  If, however, the evidence reasonably supports

2   both affirming and reversing the denial of benefits, the Court may not substitute its judgment

3   for that of the Commissioner.  *Reddick*, 157 F.3d at 720; *see also* *Thomas v. Barnhart*, 278

4   F.3d 947, 954 (9th Cir. 2002) (if "the evidence is susceptible to more than one rational

5   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be

6   upheld").

7   **B.     Issues on Appeal**

8           Plaintiff does not challenge the determinations under steps one, two, and three,

9   namely that plaintiff engaged in substantial gainful activity for five months in 2006, but has

10  not been substantially gainfully employed since March 6, 2003, that some of plaintiff's

11  impairments are severe, while others are not, and that none of plaintiff's impairments, alone

12  or in combination, meets or equals a listed impairment.  Plaintiff assigns error only to the

13  ALJ's conclusion under step four that he can perform past relevant work.  With regard to the

14  analysis performed under step four, plaintiff asserts that the ALJ (i) improperly assessed his

15  residual functional capacity, and (ii) failed to fully assess the requirements of past relevant

16  work.

17          **1.     Residual Functional Capacity**

18          The ALJ found that plaintiff had the residual functional capacity to perform

19  "competitive, remunerative, unskilled work" requiring him to understand, remember, and

20  implement simple instructions, make simple work-related decisions, respond appropriately to

21  supervision, co-workers, and usual work situations, and deal with changes in a routine work

22  setting not dealing with the general public.  AR 16.  The ALJ further found that plaintiff had

23  no physical limitations.  *Id.*  Plaintiff challenges the ALJ's determination that he can respond

24  appropriately to supervision and co-workers.  He also asserts that the ALJ should have found

25  limitations in his ability to tolerate stress.

26

ORDER   -4-

1    The record in this matter contains opinions from one treating physician, four

2    evaluators, and a consulting psychologist.  The record also includes forms completed by

3    plaintiff's mother and his then girlfriend.  In assessing plaintiff's residual functional

4    capacity, the ALJ discounted the treating and examining physicians' opinions, as well as the

5    statements of plaintiff's mother and now former girlfriend, _see_ AR 321 (indicating they

6    "broke up").  Plaintiff argues that the ALJ erred in disregarding such opinions and

7    statements.  The Court has reviewed the entire record and concludes that the evidence is

8    subject to at least one interpretation supporting the ALJ's decision, which must therefore be

9    upheld.

10    The Ninth Circuit has distinguished between three classes of physicians (treating,

11    examining, and consulting) in defining the weight to be given their opinions.  _Lester v._

12    _Chater_, 81 F.3d 821, 830 (9th Cir. 1995).  A treating physician's opinion is given the most

13    weight, followed by an examining physician, and then by a consulting physician.  _Id._ at 830-

14    31.  In the absence of a contrary opinion, a treating or examining physician's opinion may

15    not be rejected unless "clear and convincing" reasons are provided.  _Id._ at 830.  If

16    contradicted, a treating or examining doctor's opinion can be discounted for "specific and

17    legitimate reasons that are supported by substantial evidence in the record."  _Id._ at 830-31.

18    Lay witness testimony concerning a claimant's symptoms should be taken into

19    account, but may be disregarded based on "reasons that are germane" to the particular

20    witness.  _Lewis v. Apfel_, 236 F.3d 503, 511 (9th Cir. 2001); _see Bayliss v. Barnhart_, 427

21    F.3d 1211, 1218 (9th Cir. 2005).  The nature of a lay witness's relationship with the claimant

22    can be a germane reason for doubting the witness's credibility.  _Greger v. Barnhart_, 464

23    F.3d 968, 972 (9th Cir. 2006) (observing that, due to the witness's "close relationship" with

24    the claimant, she was "possibly 'influenced by her desire to help [him]'").

25    Here, the record reflects that, in December 2005, Janine Shaw, M.D., a treating

26    physician, completed an evaluation form in which she rated plaintiff's depression and social

anxiety disorder a "4" on a scale of 5, corresponding to "marked" interference with the activities Dr. Shaw listed by letter from among the choices on the form, namely "(h)" for hearing, "(i)" for communicating, and "(j)" for understanding or following directions. AR 248.  In stark contrast, Dr. Shaw's treatment notes from April 2004 indicated that plaintiff's "[a]nxiety is *under good control*, using Lexapro . . . and trazodone."  AR 243 (emphasis added).  Moreover, in November 2005, when plaintiff visited Dr. Shaw regarding a "stitch" in his side, and also in December 2005, when plaintiff requested that Dr. Shaw complete the above-mentioned form, no mention was made of any anxiety-related issues; the notes from November 2005 simply reflect physical complaints, an elevated amount of stress seemingly related to the anticipated birth of a child, and an increase in the prescribed amount of trazodone to address "symptoms of insomnia," AR 233, which appeared to work, *see* AR 231 (plaintiff later reported that "he is sleeping quite well with trazodone"), while the December 2005 entry states inconsistently that plaintiff "is off Lexapro" because "it made him feel a little bit anxious" and that "[h]e is using Lexapro at bedtime," AR 228.  Thus, Dr. Shaw's chart notes do not substantiate the level of interference with plaintiff's social functioning that she indicated on the December 2005 evaluation form.

In addition, the various non-treating evaluators have not presented consistent assessments of plaintiff's impairments.  Plaintiff was examined in May 2003 by Kevin Morris, Psy. D., in March 2004 by Susan Hakeman, M.D., in December 2005 by Ellen Walker Lind, Ph.D., and in September 2006 by Anselm Parlatore, M.D.  Over this time, the check-box scores concerning plaintiff's functional limitations in the social factors of relating to co-workers and supervisors, interacting in public contacts, and tolerating the pressures and expectations of a work setting ranged from "marked" or "severe," AR 139 (Morris), to "moderate" on all fronts except tolerating stress, AR 195 (Hakeman), to (most recently) "mild" with regard at least to public interactions, AR 279 (Parlatore).  As noted by the ALJ, these conclusions were "based largely on [plaintiff's] subjective reports," AR 19, and their

1   variation can probably be attributed to this method of gathering data.  The evaluators

2   apparently did not review plaintiff's medical records, which tend to contradict the severity

3   assigned by some of them to plaintiff's impairments in social functioning, and they did not

4   interview plaintiff's supervisors, co-workers, or friends.

5         In contrast to the check-box forms completed by the various evaluators, Janis Lewis,

6   Ph.D., a consulting psychologist, provided a narrative assessment of plaintiff's functional

7   capacity.  In December 2003, she described plaintiff as "able to cooperate with supervisors

8   and a small group of coworkers but not the public."  AR 133.  In forming this opinion,

9   Dr. Lewis relied in part upon evidence that plaintiff resided in a small apartment with his

10  girlfriend and several other people.  _Id._  Dr. Lewis also completed a check-box form in

11  which she indicated that plaintiff was only "moderately limited" in his ability to accept

12  instructions and respond appropriately to criticism from supervisors and in his ability to get

13  along with co-workers or peers.  AR 132.

14        In addition to crediting the consulting psychologist's somewhat dated opinion, the

15  ALJ noted that, more recently, in September 2006, when plaintiff sought services at

16  Whatcom Counseling & Psychiatric Clinic, he told both the intake evaluator, Bob Poole,

17  M.A., and the clinician, Phillip Tageant, M.S.W., that his primary treatment goal was "to get

18  on S.S.I."  AR 287, 290.  This information, along with evidence that plaintiff failed to attend

19  several group therapy sessions, AR 183, 186-89, and unilaterally ceased taking prescribed

20  medications, AR 164, 228, led the ALJ to conclude that plaintiff "has not received treatment

21  of the duration or frequency one would expect from an individual suffering from debilitating

22  symptoms."  AR 18.

23        Meanwhile, with respect to plaintiff's alleged difficulties relating to supervisors and

24  co-workers, the most that his mother and former girlfriend offered were indications that

25  plaintiff's reaction to rude behavior was generally extreme.  Plaintiff's mother reported that

26  plaintiff's behavior at work depended "on if they were nice to him."  AR 80.  According to

ORDER   -7-

1   her, plaintiff "would get offended" or "would get mad if they yelled at him" and then "he

2   would quit the job." *Id.*  Likewise, plaintiff's former girlfriend stated that plaintiff "works

3   fine on his own, but if people are rude, disrespectful, or mean, he gets mad and leaves."

4   AR 91.  Plaintiff's former girlfriend also indicated that plaintiff socialized with friends,

5   participating in the activities of music, hiking, and fishing.  AR 91.  His mother concurred

6   that plaintiff had friends with whom he would engage in activities, and she also listed music

7   among his interests.  AR 80.

8        In sum, the record supports affirming the ALJ's decision and the Court will not

9   substitute its judgment for that of the Commissioner.  Because the treating and examining

10  physician's opinions are contradicted, the "specific and legitimate reasons" standard applies.

11  Here, the treating physician and the four evaluators each completed check-box forms, which

12  are not as favored as the type of individualized opinion crafted by the consulting

13  psychologist, *see* *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996), which were not fully

14  consistent with one another nor with the treating physician's chart notes, and which were

15  based primarily upon plaintiff's self-reports rather than objective tests or verification by

16  other sources.  Although the consulting psychologist's view preceded those of the treating

17  physician and three of the four evaluators, it was also followed by plaintiff's four- or five-

18  month stint as a security guard in 2004 and his work at a landscaping company for a five-

19  month period in 2006.  *See* AR 321-22, 338-39.

20       As noted by the ALJ, plaintiff's chief complaints (inability to tolerate crowds and

21  difficulty with supervision) are inconsistent with his post-onset work history (patrolling a

22  large tourist market and taking direction concerning landscape design), *see* AR 334-35, 340-

23  41, and his lack of compliance with treatment directives belies his claim of debilitating

24  mental disorders.  Moreover, although the ALJ was entitled to consider the possible bias

25  plaintiff's mother and former girlfriend might have, even if their statements are fully

26  credited, they are at best equivocal, painting a picture of a young man who is able to form

ORDER   -8-

1 social relationships and who is able to work so long as his supervisors and co-workers are

2 pleasant and polite.  Thus, the ALJ had sufficient basis for discounting the treating and

3 evaluating physicians' opinions and the statements of plaintiff's mother and former

4 girlfriend, and the ALJ's assessment of plaintiff's residual functional capacity is without

5 legal error and supported by substantial evidence.

6         **2.**    **Past Relevant Work**

7       The ALJ concluded that plaintiff is capable of performing work as a landscape

8 laborer, stating that such employment "does not require the performance of work-related

9 activities precluded by the claimant's residual functional capacity."  AR 22.  The ALJ noted

10 that plaintiff had engaged in such work since his alleged onset date, AR 22, and that plaintiff

11 had testified he had "always" performed such work, AR 23.  *See also* AR 323 ("I've always

12 done landscaping.").  Plaintiff contends that the ALJ erred in failing to investigate and make

13 explicit findings concerning the mental demands of plaintiff's past relevant work.  In making

14 this argument, plaintiff presupposes that the ALJ's determination of plaintiff's residual

15 functional capacity is flawed.  Given the Court's decision on that issue, however, it need not

16 address this challenge to the second part of the ALJ's step four analysis.  Having properly

17 concluded that plaintiff "can respond appropriately to supervision, co-workers and usual

18 work situations," AR 16, the ALJ was not required to investigate or make findings

19 concerning the actual level of supervision or interaction with co-workers involved in

20 plaintiff's past relevant work.

21 **Conclusion**

22       For the foregoing reasons, the Commissioner's denial of DIB and SSI benefits is

23 AFFIRMED.

24 ///

25 ///

26 ///

ORDER   -9-

1    IT IS SO ORDERED.

2    DATED this 17th day of April, 2008.

3

4                                      Thomas S. Zilly

5                                      Thomas S. Zilly
                                       United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER   -10-